Okay, Mr. Clark. Good afternoon, Your Honor. My name is Colin Clark. I'm here on behalf of Intervenor Jeff Landry, the Louisiana State Attorney General. The constitutional issue before this Court is a weighty one, a First Amendment question of considerable importance. However, based on this record, this Court ought not, cannot, and would not want to reach that question here. In other words, it doesn't merit deciding the merits. In a concurring opinion that I cited a couple of times, Society of Separationists v. Herman, Judge, you wrote a concurring opinion that you were disturbed that the plaintiff would be without a remedy. In that case, the damages claim was against a judicial officer that had immunity. In this case, if this Court finds no standing, as I asked that it find, this Court would, this case would go back to the District Court to determine Mr. Seals as applied claim for which he would have standing as a damages claim, not a declarative claim or an injunctive claim. Now, why ought not this Court reach the issue? Well, the record is extraordinarily meager. There are no affidavits, no depositions, no testimony. In fact, the stipulated facts are few. On Christmas Eve, 2015, three Tangipahoa Parish Sheriff's deputies arrested Plaintiff Travis Seals for four crimes, including a violation of Louisiana Revised Statute 14122, or public intimidation. The problem is we actually don't know what happened in that house on that day. According to the plaintiff, he alleged in his complaint, while he was being unlawfully seized, unlawfully arrested, and unlawfully pepper sprayed, Seals verbally objected to the deputies' conduct and promised to make lawful complaints against the deputies and about their conduct. This was not stipulated. The defendants denied that allegation. In fact, they further alleged that the plaintiff made threats of physical harm against the deputies, violently resisting lawful arrests. And as I'll explain later, the State of Louisiana's position is that the plaintiff's version of events is not covered by the statute, but the defendant's most surely is, and that does not run across any First Amendment considerations. In order to prove standing, to raise a First Amendment facial challenge, and I'm quoting from this court, Mississippi State Democratic Party v. Barber, a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest but prescribed by statute. And as I appreciated in a footnote, this court stated that it requires evidence of concrete plans to violate the statute. And again, this is only for facial declarations. So what allegations do we have in this record about future enforcement? A single paragraph in the plaintiff's complaint, again, states essentially that the statutes are unconstitutional, both on their face and as applied, and as it could likely be applied to SEALs and others at any time in the future. And again, the defendants denied that allegation. Well the state, the defendants have disavowed prosecution here, isn't that right? Yes. According to the plaintiff at oral argument in this case below, he stated, the district attorney has said, we're not going to bring these charges at this time. We have no intention to charge you with this. And that appears on ROA 403 and 404. So with respect to future injuries, the all-important question with respect to declarative and injunctive relief, this court has said in Judge Smith, an opinion authored by you last year, in Barber v. Bryant, future injuries can provide the basis for standing, but they must be certainly impending to constitute an injury in fact. And allegations of possible future injury are not sufficient. So what have we got? Mr. Seals states that he can still be charged until Christmas Eve 2019 on 14-122, despite the disavowal by the district attorney. And again, I quote Judge Smith, allegations of possible future injury are not sufficient. That's our case on that. We don't believe that he can have standing for this challenge because of the fact that a statute of limitation, or what we call a prescriptive period in our statute, has not passed yet. The only other issue, as far as I can tell, in terms of why this plaintiff believes he has standing is the fact that he was arrested. But an arrest by itself does not establish that a prosecution is certainly impending. And the past exposure to a direct injury only supports the action and damages. And the critical case on this point is City of Los Angeles v. Lyons, which, to be fair, quotes O'Shea v. Littleton, so both of them are working in tandem. And it states that past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effects. Why isn't chilling a cognizable harm? Chilling is a cognizable harm, Judge Willett. However, there's been no allegation of chill. There's been no proof of chill. You know, we've dealt, I've litigated cases with bookstores challenging Louisiana laws on First Amendment grounds. And they said, if this law remains in effect, we're going to take down our Internet library of books because we're not complying with this new Louisiana law regarding Internet obscenity. That's chill, Your Honor, and we didn't argue standing in that case because there was evidence in the record, affidavits, concrete plans that show if this happens, then we will do this. And it chills the speech. Really when you're looking at First Amendment standing, chill is inaction, and then you have concrete plans to violate the statute, that's action. You have to show one or the other in concrete plans that are going to change your course of conduct because of the statute. Here, we don't have that. So, yes, chill is absolutely cognizable. Do people ordinarily draw up sort of specific concrete plans to have unpleasant interactions with the police? No, and I think that's why the Lyons case is so critical, because it dealt with that very issue. The City of Los Angeles v. Lyons dealt with an allegation that the chokehold that the L.A. police officers were taught violated the Fourth Amendment. And Mr. Lyons was choke-held, and he argued that this practice was illegal and asked for declaratory and injunctive relief. And he could show that 15 other people or something like that had been choke-held this way and that it resulted in a couple of deaths. And the U.S. Supreme Court said, yes, but you don't have any continuing present adverse effects, so you don't have standing for injunctive relief. And we assume, Mr. Lyons, that you will conform your habits to lawful behavior in the future such that you won't have unpleasant or illegal interaction with an officer again. Now, contrast that with a case like Hill v. Houston, where we have a person who does the same thing on the same street corner and has been arrested five times for it and has, there's evidence in the record he's going to do it again and he's going to get arrested for the same statute. That is one way to prove it, but certainly not the only way. The Center for Individual Freedom case, which is a Fifth Circuit case that we cited, dealt with a Louisiana election law that allegedly violated the First Amendment. And they had made plans to run certain ads and could show that they had this course of conduct, but because it might run afoul of this state law, they filed suit. And they had standing under this court's And I also want to point out, Judge Willett, I mean, you served on the state bench. If Mr. Seals was arrested and prosecuted for a violation of public intimidation, the Louisiana state courts are open to his claim that the statute violates the First Amendment. And so his facial challenge would have a place had he been prosecuted. I don't think, and I'm surprised the plaintiff hasn't responded to this case because we've cited it below, cited it here, kept talking about it, this Tenth Circuit case, Phelps v. Hamilton, which dealt with three funeral picketing statutes in Kansas. And the Phelps people made a First Amendment challenge to the statutes, and the Tenth Circuit, under their standing doctrine, citing Lyons and O'Shea, concluded that the plaintiffs in this case do not have ongoing state prosecutions and therefore don't meet the case or controversy requirement to maintain standing as to their injunctive case. In fact, in Ward v. Utah, another Tenth Circuit case, they specifically held that an arrest alone does not confer standing for prospective injunctive and declaratory relief. Now, my opposing counsel says that, look, Lyons does not apply to the First Amendment. They relied upon it in Phelps, in society of separationists. This court relied on Lyons, Fifth Circuit case published. And in the Geiger case, Geiger dealt with a guy, a prisoner, who a certain magazine was withheld because it allegedly contained obscenity, and he filed for declaratory and injunctive relief. And this court said, well, under Lyons, you have no injunctive or declaratory claim. And so twice this court has squarely held that Lyons and that continuing adverse effect test applies in the First Amendment area. Now, I see that I have only three minutes left. I do want to talk about the merits. There are a number of exceptions to the First Amendment. Not all speech is protected. This court knows that. Speech integral to criminal conduct is one of the cutouts that is speech that is not protected, categorically unprotected, by the First Amendment. Speech integral to criminal conduct does not mean any crime that the state chooses to pass, but it has been limited to instances such as bribery, extortion, true threats. And here, bribery and extortion figure large. And I point out United States v. Quinn, this court's case where they expressly found extortion to fall outside of the First Amendment. Louisiana's position is that this crime is indistinguishable from extortion. And so if it covers nothing but extortion, it therefore does not violate the First Amendment. Louisiana already has a statute that criminalizes extortion. And if you were to look at particularly a few years back, Louisiana had 25, something like that, different theft statutes. We actually cited a case, State X. Rel. J.M., I believe. It's a, the J.M. case is, look, if Louisiana passes two overlapping statutes, that doesn't present a constitutional problem. Yes, there are statutes in Louisiana that could be covered. I was given a notice that my opposing counsel is going to show you a different statute that wasn't, for which this man was not arrested. So yes, there is overlap. But that doesn't make one statute more or less constitutional. In fact, in the Robertson case, which is a habeas case out of this court, this court looks at the Texas theft statute. And instead, well, Texas theft is where extortion is covered. And so because it's a lot like extortion, the state courts were not unreasonable in saying that this theft statute covers non-First Amendment protected behavior because it's extortionary. The district court erred considerably when it decided that it could interpret the reach of state statutes, or in other words, it chose to do nothing but look at the words of the text and draw an inference from its literal meaning. State v. Daniels in 1959, albeit old, authoritatively defines this statute and its reach. And it states essentially that public intimidation has the same intention as public bribery. In 1968, the Louisiana Supreme Court held that bribery requires corrupt intent. And I give the definition in the brief. I see that my time is running out. I simply want to note that if you look at then the Felton case, the third in this triplicate, which defines extortion, that is indistinguishable from public intimidation as it has been challenged here. And with that, I'll leave the rest of my time for rebuttal. Thank you. You've saved time for rebuttal, Mr. Clark. Thank you. Mr. Laughlin. Thank you, Your Honor. May it please the Court. As you can appreciate, the state's main argument is about standing. And frankly, this is the worst and the weirdest way for standing to come to this Court. This is an argument raised on an interlocutory appeal by an intervener who was given permission to intervene solely to defend the statute. The defendants didn't defend the statute. They didn't oppose the summary judgment at all or any of the facts motion for summary judgment on the basis of standing. The issue of subjective chill is what — Because — Sorry, Your Honor. — standing is jurisdictional. It's something that we need to examine regardless of how it was raised or who raised it. In fact, we would raise it on our own motion if we had some sort of indication that there was an issue. That's true, Your Honor. And the way you examine it in this case, and I think we pointed this out in our 28J letter, is you look at the posture of the case. So in this case, it's based on just the allegations in the complaint. They're general allegations that this statute — Seals was arrested. The statute can be applied against him and others in the future. Those are the kind of general allegations that this Court have said on a motion to dismiss are sufficient. They embrace the specific allegations, the subjective chill allegations. And every single standing case that the State cited, society of separationists, all the others today, the Mississippi Democratic Party case, all of those, there was some kind of a motion. There was a motion for summary judgment or cross motions for summary judgment. There was a motion to dismiss, a 12B1 lack-of-subject-matter-jurisdiction motion to dismiss, which is the usual way standings addressed. The plaintiff in that case whose standing has been challenged gets to say, I do have standing. Here's evidence of my standing. He also gets to amend his complaint just as a matter of course within 21 days to put in allegations on standing. In this case, there's been no motion. Every single case, the NRA case, the Clapper case, the Laird case, all of the cases cited for standing by the State involve a motion for summary judgment, an evidentiary hearing, or a motion to dismiss, something that brings standing to the fore rather than an opposition to a summary judgment saying judge dismiss it on the basis of standing. Well, we have general allegations. That's sufficient. The Zimmerman v. City of Austin is the case we cited in our letter that cites Acorn v. Fowler talking about a general allegation embraces specific allegations. And if we're going to treat this as a motion to dismiss, which is kind of where we are on standing, those allegations are sufficient. We don't have we didn't have a full-blown evidentiary hearing. We didn't have a trial. We didn't have anything. We're developing a record on the facts giving rise to standing like we do in every single other case that the State cited. Lyons, the district court cited Lyons v. Louisiana for the special solicitude given to First Amendment standing. Somebody who's expected by law to comply with the law and not have another run-in with police, that was the case in Lyons. But in the First Amendment, somebody who does that is somebody who self-censors, somebody who keeps his mouth shut, doesn't speak out on matters of public affairs. And what we're dealing with in this statute is the highest kind of First Amendment-protected speech. This is not about burning a flag. It's not about heckling mourners at a funeral. Some of these other things that the courts have held are protected simply because the alternative is the State gets to decide what's of what the First Amendment is all about. The court held that last year again in the Turner v. Driver case on the right to film police and film police stations. You get a right to hold government officials accountable. This goes back to the founding. It goes back to the English Bill of Rights. It goes back further than that. You get a right to say the king is wrong. The king's men are doing their job incorrectly. Is there anything that has been alleged regarding the intent to engage in speech or conduct in the future? There has, Your Honor. And as I say, it's general. It's in the record at page 16 in the complaint, paragraph 38. The seals, we allege, the statute's vague and overbroad both on its face and as applied to seals in this case and as it could likely be applied to seals and others in the future. So that's a general allegation, but it embraces the specific allegation. If it's going to be applied to seals in the future, he can be arrested in the future if he makes a complaint. I was just thinking, I was just looking at the Mississippi State Democratic Party case where it seems to me that it's unparalleled here where there was no expression made of an intent to engage in future conduct or speech. And that was the case on closed primaries versus open primaries. Again, Your Honor, that was on a motion for summary judgment by the defendant where there was, standing was examined in a sort of a full-blown way, or at least more comprehensively than just looking at the complaint, which is all you can look at in this case. Even if the court's going to say, we really need to look at standing, there's been a credible challenge to standing and whether this is an Article III case, you look at the complaint. And the precedent of this Court is that the general allegations are sufficient. There's been no allegation by the State or anyone that there's a disputed fact about standing, about what seals is going to do or not do as a result of this statute. As I say, the defendants didn't oppose the motion at all. I don't know that the Court could even address that kind of disputed fact on an interlocutory appeal. Is it your position that under the state of this record, we should take no cognizance at all of the disavowal of any prosecution under this statute? Well, I think what there is to take cognizance of is that the prosecutor said, we have no intention to prosecute you at this time. So to me, that's more of a plus factor. We have the general allegations that support a subjective chill, plus we have the fact that seals can still be prosecuted, not only in the future, but for this very crime just as a matter of Louisiana law. I certainly concede that the DA said we refuse the charges, but we're not going to bring them at this time. We don't have any present intention to bring them at this time. It doesn't mean they can't be brought in the future. But again, that's not all we're dealing with. Now, Mr. Clark made the assertion that if there's no standing on a facial challenge, that your client would still have standing on an as-applied challenge. Do you agree with that? I agree with that, Your Honor. But one of the reasons why this motion for partial summary judgment is a facial challenge is to avoid a lot of those factual disputes. It's undisputed that Mr. Seals was arrested for supposedly violating the public intimidation statute. He could have engaged in true threats, and the statute would still be overbroad and unconstitutional. That's why the posture of the case in front of the court today was strictly the facial challenge. Yes, it'd still have an as-applied challenge. It'd still have a vagueness challenge. And I think based on the merits and how the state characterizes this statute, the vagueness challenge might be pretty good if they're right. Because to say that this statute is indistinguishable from extortion, and that the district court erred in basing her decision on what the statute said, I think is just wrong. That's what you do when you want to know what a statute means. You read what the language of the statute is. And you usually don't need to go beyond that unless it's absurd or leads to some absurd consequence. In this case, what I've printed out is our statute, RS-14122, uses the term threats. It criminalizes threats, all kinds of threats. The benign threats that we allege happen here. A very similar statute is RS-14122.2, threatening public officials, which criminalizes verbal or written communication which threatens serious bodily injury or death to a public official. That criminalizes true threats and only true threats. That's a more narrowly drawn statute than the statute we're dealing with. The state has never conceded that this statute regulates speech based on the content of the speech, and yet they at the same time say the intent is to regulate an attempt to influence a public official. Well, speech that regulates based on the intent is a content-based restriction. A content-based restriction is presumptively unconstitutional. They've never rebutted that presumption. They didn't try below. They didn't really try here. They kind of added in a new argument that it satisfies strict scrutiny, but it doesn't. There's no compelling interest that the state has ever put forward. The district court sort of hypothesized, well, I guess we don't want public officials and school bus drivers and all these people to be unduly intimidated in their job, but the court can't supply the interest. I mean, I can assume that as well, but even then, even if it was a compelling interest, it's not narrowly tailored because there's a more narrowly tailored statute on threatening a public official that's limited to true threats. And likewise, I think to say that this statute is indistinguishable from extortion and it regulates speech that's integral to criminal conduct, that's also, I think, a little bit silly. Again, this is about talking about how government officials do their job and attempting to influence their job. But if I say to a police officer, if you violate my civil rights, I'm going to threaten you. That's a threat, grammatically. It's a threat covered by the statute. It's threatening to do something that's completely lawful. And the state says, well, that's extortion. And we think that's a ridiculous position. What is your best recommendation, if we agree with you? Is it merely to say that the district court correctly got it as overbroad and thus unconstitutional? Yes, Your Honor, it is. It's that the district court is correct that there's a presumption of unconstitutionality because it is content-based. That presumption was never rebutted. As to standing, the complaint, the general allegations of the complaint, allege standing. If there was going to be a further inquiry into standing in an evidentiary hearing, the defendant, or maybe the state in this case, would have to file a motion or do something to provoke that. So we have general allegations of standing that the court recognized. The court relied in part, I believe it was on Judge Smith's opinion in the Carmoose case, the Center for Individual Rights, where the court ultimately found the regulation to be... I want to make sure I understand your remedy response to Judge Weiner. Are you saying that if we agree with you that the statute is overbroad, that the remedy would be to strike the statute as a whole, strike the threats part of the statute, or something else? I think to strike the statute as a whole as being overbroad, the district court found that it was overbroad insofar as it addressed threats that aren't true threats, but I think the federal court's remedy is to say the statute is overbroad in its entirety. Certainly, we don't say that there's anything wrong with regulating violence and force and things that aren't true threats, but the fact that it regulates this whole realm of speech, any kind of a threat, you know, if you threaten to rule against me, I threaten to seek a re-hearing. Well, that might be a stupid thing to say, but it's not really a threat, but there's any number of threats like that, and the state wants to say, well, it's confined to attempting to obtain something from a state official that you're not entitled to as a matter of right. Well, what is that? Something you can get a mandamus on? There are very few things that I'm entitled to that I can demand as a matter of right from a politician or a police officer. The example below was the judge said, well, can I tell my city councilman if you don't fix this pothole, then I'm going to run against you, I'm going to oppose you for re-election, and the state said, oh, no, that's because you have a right to that. Well, you have a right to get a pothole fixed? You have a right to all these other things? I guess I have a right to a marriage license to marry a man or a woman, and maybe I can get a marriage license or I'll sue. Well, under this statute, that's a felony. So certainly anything that I'm entitled to as a matter of right is nothing within the discretionary function of any of these state actors, and to read that into the statute like the district court said is to find words that aren't there. The statute says what it says. It's not confined to threats. The only qualifier is in the state v. Daniels, Louisiana Supreme Court case from 60-odd years ago, is that it's a specific intent crime and it requires the specific intent to influence the state actor in his job, how he does his job. That's core First Amendment activity. Do your job the way I say. Do your job. I don't agree with the way you're doing your job, governor or representative or police officer or school bus driver. You should do it the way I say. They can listen to me or not listen to me, but it's hardly criminal to say that. So we do ask that the court affirm the district court, to find that the statute is presumptively unconstitutional, to find that it's overbroad as a matter of law and violates the First Amendment. Thank you, your honors. Mr. Clark, you've saved time for a vote. Yes, your honor. Justice Oliver Wendell Holmes wrote, the exclusive authority to enact laws carries with it the final authority to say what they mean. Therefore, the Louisiana Supreme Court has exclusive authority to determine the reach of this statute. If this court does not understand what a threat is, for example, what constitutes a threat? Well, the Louisiana Supreme Court has never spoken on that precise issue. Are you saying we have power to define threat to mean only violent threats? I'm saying this court doesn't have a power to define the word threat at all in this statute. I ask this court to certify the question to the state Supreme Court. But I would, I mean, if you want my Colin Clark's opinion, a threat to file a civil suit or things like that don't qualify as threats under the statute. But again, we're pretty far afield of the facts of this case to the extent we even know what they are. Does it not satisfy the actual language of the statute? I'm sorry, may I have your hypothetical again? No, I mean, I just don't know how. But if you look at Black's Law Dictionary, the textbook definition of extort or extortion requires illegal... What about threat? How does Black's define threat? Now that I don't have memorized, but... Public intimidation is the use of threats with the intent to influence a public officer's conduct. The official comment written in 1950 says that it would include threats of violence as well as threats to a person's character. I think that... Well, it doesn't say violence, comma, force, comma, or threats of violence or force. It says violence, comma, force, comma, or threats. It doesn't say threats of violence. It doesn't say threats of force. It just says threats. I'm just saying that in the reporter's comment, which is not the law, but the reporters who said it, that it would include threats of violence as well as threats to character. And I think that what they meant, if I were to argue before the State Supreme Court, is that they meant defamation or other unprotected conduct. The Louisiana Supreme Court hasn't had an opportunity to really give this statute any breadth or length since 1959 before... At that point, Chuplinski was basically the state of the law. And so to then rule on this opportunity to construe it, as it has the right to do, I think disparages federalism. The injunction order in this case says that they filed a motion for partial summary judgment. So why we're talking about motions to dismiss in 12b-6 is beyond me. The general allegations do not embrace the specific facts necessary to support the claim in this case because this was not filed as a 12b-6 or a motion to dismiss. And I quote, this is from our response to the 28J letter, when the defendant moves for summary judgment because of lack of standing, however, the plaintiff must submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue. So we really do not get beyond standing in this case. The defendants did not stipulate to any of the facts they allege. The statement regarding undisputed facts as to the partial motion for summary judgment does not discuss anything relevant to what happened during the arrest. So all we have is this allegation that it's likely to be applied to seals or others in the future. How? What's the plan? What's it going to do? And I hear again and again that he says that there's a presumption of unconstitutionality because this is strict scrutiny. Now, the district court did mention strict scrutiny, and we've said that this is not strict scrutiny, but the court ruled on overbreadth. And on an overbreadth claim, there is no presumption of unconstitutionality. In an overbreadth claim, which is a variant of the First Amendment, which deals with third-party standing, the mover has the burden of proof, not the respondent. I think, Judge Smith, you hit the nail on the head that Mississippi State Democratic Party controls this case. In that case, this court said, although a plaintiff need not expose himself to actual arrest or prosecution in order to challenge a statute for infringing constitutional rights, the plaintiff must be seriously interested in disobeying the statute. That serious interest is expressed through evidence and allegations that are stipulated. None of that is here, and while there are interesting constitutional questions for which this court might choose to certify, none of that is necessary because a quick reversal on standing is all that is required. And thank you for your time. All right. Thank you, Mr. Clark. Your case and all of today's cases are under submission, and the court is adjourned.